UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LLOYL TENNISON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 15-1113 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

# O R D E R  &  O P I N I O N

This matter is before the Court for initial consideration of Petitioner Lloyl Tennison's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, filed on March 23, 2015. (Doc. 1). Petitioner has also filed a memorandum of law in support of his § 2255 motion. (Doc. 3).

Section 2255 of Chapter 28 of the United States Code provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires district courts to conduct preliminary reviews of § 2255 motions. The rule states in relevant part: "If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and

direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order."

**BACKGROUND**

In 2012, Petitioner was convicted of conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) upon a guilty plea. (Judgment, *United States v. Tennison*, No. 12-cr-10015 (C.D. Ill. 2012), Doc. 101). He was sentenced to a term of 240 months' imprisonment and judgment was entered on October 1, 2012. (*Id.*).

Petitioner entered a blind guilty plea to the one-count indictment at a change of plea hearing held on May 14, 2012. (12-cr-10015, Doc. 134). The indictment charged, in relevant part, that beginning in early 2009, Petitioner and six other co-defendants "did knowingly conspire, confederate, and agree with each other . . . to knowingly manufacture methamphetamine and distribute methamphetamine." (12-cr-10015, Doc. 1 at 2). The indictment specified that the conspiracy "involved more than 500 (five hundred) grams of a mixture and substance containing a detectable amount of methamphetamine." (*Id.*).

During the change of plea hearing, Petitioner confirmed that he had received a copy of the indictment charging him with conspiracy to manufacture and distribute methamphetamine. (12-cr-10015, Doc. 134 at 4). He indicated that he had discussed the charge generally with his attorney, discussed all possible defenses, discussed his right to a trial by jury, discussed the pros and cons of proceeding to trial, and decided to plead guilty to the charge. (*Id.* at 4-5).

2

The Court satisfied itself that Petitioner fully understood the charge to which he pleaded guilty. It explained that there were three essential elements to the charge in the indictment: first, the Court said, "the government would have to prove that the conspiracy charged in the indictment existed." (*Id.* at 6). The Court went on to explain that "[a] conspiracy is simply an agreement between two or more persons to commit an unlawful act [, which in this case] is the manufacture and distribution of methamphetamine." (*Id.* at 6-7). The Court explained that the second element of the offense is that Petitioner "knowingly and intentionally became a member of that conspiracy," which means that Petitioner "realized what [he] was doing, [was] aware of the nature of [his] conduct, [and] did not act through ignorance, mistake or accident." (*Id.* at 7). Finally, the Court explained that "the third element is that the conspiracy involved more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine." (*Id.*). Petitioner indicated that he understood each element and that he did not have any question as to what any of the elements to the offense meant. (*Id.* at 7-8).

Next, the Court satisfied itself that Petitioner fully understood the consequences of entering a guilty plea. It explained that that pleading guilty to the indictment would carry a mandatory minimum. (*Id.* at 8). The Court told Petitioner that he would face a mandatory term of ten years imprisonment if he did not have a prior felony drug conviction. (*Id.*). The Court also told Petitioner that he faced a mandatory minimum term of 20 years of imprisonment if he had one prior felony drug conviction. (*Id.* at 9). Finally, the Court told Petitioner that he would face a mandatory minimum term of life in prison without the possibility of release if he

3

had two prior felony drug convictions. (*Id.*). The Court summarized: "Now, this means that upon my acceptance of your guilty plea here today, you would be convicted of the charge to which you're pleading guilty, and I will have to sentence you to the applicable mandatory minimum, whether it be 10 years, 20 years or life." (*Id.* at 9-10). Petitioner indicated that he understood these consequences. (*Id.* at 10).

The Court then satisfied itself that there was a factual basis for Petitioner's guilty plea. Petitioner said that he "[p]rovided a place for methamphetamine to be manufactured to get payment for a drug addiction." (*Id.* at 21). He indicated that he understood the reasons for which the others involved in this conspiracy were using his house and what they were doing. (*Id.*). Petitioner told the Court that he only used the methamphetamine produced for personal use and that he was not involved in the sale of the methamphetamine, but he also acknowledged that one of the objects of the conspiracy was to distribute the methamphetamine to other people for profit or sale. (*Id.* at 22). When asked, he told the Court that he was not sure how much methamphetamine was involved in the conspiracy. (*Id.*). However, Petitioner later confirmed the government's claim that it would prove beyond a reasonable doubt that "the amount of methamphetamine involved in the conspiracy that was reasonably foreseeable was over 500 grams of a mixture and substance containing a detectable amount of methamphetamine" was substantially true. (*Id.* at 24-25).

On the basis of the plea colloquy with Petitioner, the Court found that Petitioner was:

> fully competent and capable of entering an informed plea, that [Petitioner was] aware of the nature of the charge against him set out in the indictment and the consequences of his plea and that the [Petitioner's] plea of guilty to the indictment [was] a knowing and

4

> voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

(*Id.* at 26).

Petitioner filed a Notice of Appeal on October 2, 2012. (12-cr-10015, Doc. 107). On appeal, filed under the name *United States v. Sidell*, Petitioner challenged the imposition of a twenty-year sentence, which this Court determined was the mandatory minimum based upon Petitioner's prior conviction of a drug felony. *See United States v. Sidell*, 553 F. App'x 619, 621 (7th Cir. 2014). Petitioner did not dispute "that the conspiracy involved at least 500 grams of a mixture containing methamphetamine." *Sidell*, 553 F. App'x at 621. Nor did he challenge this Court's conclusion that his 2009 conviction was a felony drug conviction. *Id.* Rather, he argued that "the state conviction was not 'prior' to his federal conspiracy conviction, as required to trigger the twenty-year minimum because the state offense was committed as part of the conspiracy charged in federal court." *Id.*

The Seventh Circuit affirmed Petitioner's sentence of twenty years. *Id.* at 632. Tennison's judgment became final on October 6, 2014, when the Supreme Court denied his petition for a writ of certiorari. *See Tennison v. United States*, 135 S. Ct. 104 (Oct. 6, 2014). Tennison then filed this timely motion pursuant to 28 U.S.C. § 2255.

## DISCUSSION

In his § 2255 motion, Petitioner presents three grounds upon which he claims he is being held in violation of the Constitution, laws, or treaties of the United States. In his first, he alleges that he is actually innocent of his conviction and his trial counsel was ineffective when he failed to object to the amount of

5

methamphetamine reported in Petitioner's presentence report. (*See* Doc. 1 at 4; Doc. 3 at 2-4). In the second, Petitioner argues that his sentence violates *Alleyne v. United States*, 133 S Ct. 2151 (2013), and that his appellate counsel was ineffective for failing to raise the issue on appeal. (*See* Doc. 1 at 6; Doc. 3 at 5-6). In the third, he argues that he was actually innocent of the conspiracy charge and that trial counsel provided ineffective assistance at the plea bargaining stage. (*See* Doc. 1 at 9; Doc. 3 at 7-8). Each ground is considered in turn.

## I. Ineffective Assistance of Counsel and Actual Innocence of Drug Amount

In his first ground for relief, Petitioner alleges that he is actually innocent of the 500 grams or more of methamphetamine that was alleged in the indictment and the larger amount included in the presentence report that the Court adopted without objection as to the amount of drugs. (*See* 12-cr-10015, Doc. 84). Petitioner further alleges that his trial counsel was ineffective for failing to object to the amount of drugs included in the presentence report.

As an initial matter, Petitioner has framed his claim in two different ways: as an actual innocence claim and as an ineffective assistance of counsel claim. Under Seventh Circuit precedent, a stand-alone claim of actual innocence cannot be brought as a collateral attack. *See Ruth v. U.S.*, 266 F.3d 658, 661 (2001) (holding that a Rule 33 motion could not be considered a collateral attack for the purposes of § 2255 because "[a]n argument of actual innocence . . . does not implicate the Constitution."). Therefore, the Court will only consider Petitioner's ineffective assistance of counsel claim.

There is a strong presumption that counsel is effective. To succeed on a claim for ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that he was prejudiced by the deficiency such that the result would have been different without the error. *Strickland v. Washington*, 466 U.S. 668, 687-92 (1984); *see also, e.g., Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). While Petitioner must satisfy both prongs to succeed on his claim, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Petitioner is unable to establish that he was prejudiced by any alleged ineffective assistance of counsel. In the presentence report, the Government attributed 614 grams of methamphetamine to Petitioner. (12-cr-10015, Doc. 84 at 8). The government reached the total by aggregating the following:

- Two members of the conspiracy cooked methamphetamine at Petitioner's home during December 2010 on at least six occasions. Each time, the two cooks used between four and six boxes of pseudoephedrine, yielding between 13 and 15 grams of methamphetamine per cook. The government concluded that this amounted to "a conservative total of 78 grams of methamphetamine." (*Id.*).
- The same two members of the conspiracy cooked methamphetamine at Petitioner's home on at least six occasions between January and February of

7

2011. This time, each cook used between 15 and 18 boxes of pseudoephedrine, yielding 50 grams of methamphetamine per cook. The government concluded that this amounted to "a conservative total of 300 grams of methamphetamine." (*Id.*).

- The same two members of the conspiracy cooked methamphetamine at Petitioner's home on at least four occasions between March and April 2011. This time, each cook used between 10 and 15 boxes of pseudoephedrine, yielding 28 to 36 grams of methamphetamine per cook. The government concluded that this amounted to "a conservative total of 112 grams of methamphetamine." (*Id.*).

- Petitioner learned how to cook methamphetamine in April of 2011. Over the next six months, Petitioner manufactured methamphetamine on at least 62 occasions. He used two to three boxes of pseudoephedrine per cook, yielding two to four grams of methamphetamine at a time. The government concluded that this "conservatively total[ed] 124 grams of methamphetamine." (*Id.*).

Petitioner argues that this total was not foreseeable. However, he does not argue that he was somehow unaware of a larger total of methamphetamine that was cooked. Rather, he argues that the United States improperly calculated the total weight of the methamphetamine. (*See* Doc. 3 at 2). He argues that the government overstated the total amount of methamphetamine produced by over-estimating the yield of methamphetamine per box of pseudoephedrine. He suggests that there are three grams of pseudoephedrine in each box, and that the government calculated that each box would yield approximately three grams of methamphetamine. In

8

reality, he argues that each three-gram box of pseudoephedrine would yield only 1.2 grams of methamphetamine. (*Id.* at 3). Using this math, Petitioner suggests that the actual amount of methamphetamine for which he could be held responsible is less than 500 grams. (*Id.*). He argues, therefore, that he was entitled to a shorter mandatory minimum and is prejudiced because he is serving a lengthier minimum sentence. *Compare* 21 U.S.C. § 841(b)(1)(B)(viii) (ten year statutory minimum) *with* 21 U.S.C. § 841(b)(1)(A)(viii) (twenty year statutory minimum).

Petitioner's argument is problematic because he pleaded guilty to a violation of 21 U.S.C. § 841(b)(1)(A) and did not plead guilty to a violation of 21 U.S.C. § 841(b)(1)(B). (*See* 12-cr-10015, Doc. 1 at 2; 12-cr-10015, Doc. 134 at 26). On the basis of Petitioner's guilty plea, the Court was required to sentence Petitioner to a mandatory minimum of twenty years in prison, *see* 21 U.S.C. § 841(b)(1)(A), a point that the Court made abundantly clear to Petitioner during his change of plea hearing. (*See* 12-cr-10015, Doc. 134 at 8-10).

As the Seventh Circuit explained in *United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010), a person who pleads guilty to a drug crime involving a certain amount of drugs cannot later claim prejudice when his attorney fails to object to that very quantity of drugs at sentencing. This is because "[p]rejudice requires a showing that counsel's poor performance not only is a but-for cause of the complained-of result, but also deprives the defendant of any substantive or procedural right to which the law entitles him." *Id.* (internal quotation marks omitted)(citations omitted). When a defendant pleads guilty to a crime involving a certain quantity of drugs and acknowledges that his guilty plea is voluntary, he

9

cannot later challenge the quantity of drugs used in calculating his sentence because he "was not deprived of the right to speak truthfully" at the change of plea hearing and was therefore "not denied the ability to receive the sentence he claims would have been better." *Id.* In other words, the Seventh Circuit concluded that any prejudice that a defendant suffers based on his attorney's failure to object to an amount of drugs at sentencing is self-inflicted prejudice if the defendant has already pleaded guilty to that quantity of drugs. *See id.*

Here, perhaps, Petitioner would be able to demonstrate prejudice if he could show that the Court based the sentence he received on a range determined using the Sentencing Guidelines, considered an amount of methamphetamine that is greater than 500 grams, and then sentenced Petitioner to a term of imprisonment that is longer than the mandatory minimum. However, the Court gave Petitioner the most lenient sentence permitted by law for a crime to which he pleaded guilty. As Petitioner cannot establish that he was prejudiced by any ineffective assistance of counsel, his first ground for relief lacks merit. *See Parker*, 609 F.3d at 895; *Strickland*, 466 U.S. at 697.

## II. Violation of Petitioner's Sixth Amendment right pursuant to *Alleyne v. United States* and Petitioner's Counsel's Ineffective Assistance in Failing to Raise *Alleyne* on appeal

Petitioner next alleges that his sentence violates the Sixth Amendment, and cites to the Supreme Court's holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In *Alleyne*, the Supreme Court held that the Sixth Amendment entitles defendants to have a jury find beyond a reasonable doubt any fact, except for a prior conviction, that increase a minimum statutory penalty. Here, because the amount

of methamphetamine mixture resulted in a mandatory minimum statutory penalty, Petitioner argues that a jury needed to find that the conspiracy involved the prerequisite weight of methamphetamine.

Petitioner failed to raise this constitutional issue in his direct appeal. Therefore, Petitioner is barred from presenting the issue as part of a § 2255 petition unless he can show both cause for the procedural default and actual prejudice from the failure to appeal. *See Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995). In order to avoid the procedural default bar, Plaintiff alleges that his appellate counsel was ineffective when it failed to raise the argument on appeal. A claim of ineffective assistance of appellate counsel is also an independent ground that can be raised as part of a § 2255 motion. As made clear in the discussion below, however, Petitioner's appellate counsel was not ineffective.

To establish ineffective assistance of appellate counsel, Petitioner must show (1) his appellate counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland*, 466 U.S. at 687-92. In assessing whether appellate counsel was deficient, the Court looks to the merit of the issue that appellate counsel failed to raise. In order to succeed, Petitioner must show that "appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).

Petitioner cannot establish ineffective assistance of counsel based upon his *Alleyne* claim because his *Alleyne* claim lacks merit. Petitioner pleaded guilty to the indictment brought against him, which charged him with being part of a conspiracy

11

to manufacture and distribute methamphetamine and further charged that the conspiracy involved more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine. (12-cr-10015, Doc. 1 at 2). The indictment, therefore, alleged an amount of methamphetamine sufficient to trigger the minimum term about which Petitioner now complains. *See* 21 U.S.C. § 841(b)(1)(A)(viii). When Petitioner pleaded guilty to the indictment, he waived his right to have a jury determine the drug quantity. *See United States v. Ramirez*, 528 F. App'x 678, 679 (7th Cir. 2013).

During his change of plea hearing, Petitioner did not admit to a specific amount of methamphetamine, saying that he was "not sure about the amount that was produced." (12-cr-10015, Doc. 134 at 22). At that point, the Court told him that it would make the final determination about the amount of methamphetamine involved in the conspiracy at the time of sentencing. (*See id.*). This exchange, however, does not negate Petitioner's admission that the conspiracy involved more than 500 grams during the change of plea hearing. The United States provided an independent basis for Petitioner's plea and stated that the amount of methamphetamine involved in the conspiracy was over 500 grams of a mixture and substance containing a detectable amount of methamphetamine. (*Id.* at 23-24). Petitioner acknowledged that the government's representations were substantially true. (*Id.* at 25). Moreover, the Court informed Petitioner than an amount of methamphetamine involved in the conspiracy that was over 500 grams was an element of the crime with which he was charged. (*Id.* at 7). In light of all of this,

Petitioner's plea of guilty (*id*. at 26) is an admission that the conspiracy involved a sufficient amount of methamphetamine to trigger the mandatory minimum.

As the Seventh Circuit has made clear, "[a]n admission is even better than a jury's finding beyond a reasonable doubt; it removes all contest from the case." *United States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002). Therefore, Petitioner's *Alleyne* claim is frivolous, as his guilty plea and the admissions made during his change of plea hearing relieved the United States of its need to prove facts to a jury beyond a reasonable doubt. *See United States v. Harris*, 543 F. App'x 587, 589 (7th Cir. 2013); *Ramirez*, 528 F. App'x at 679-80.

Because Petitioner's *Alleyne* claim is frivolous, Petitioner's appellate counsel was not ineffective for failing to raise it on appeal. A frivolous issue cannot be "obvious and clearly stronger than the issues he did raise." *Smith*, 565 F.3d at 352. Petitioner's standalone ineffective assistance of appellate counsel claim fails, and it cannot cure Petitioner's procedural default. Even if it could, Petitioner's *Alleyne* claim fails on the merits.

### III. Ineffective Assistance of Counsel at Plea Bargain – not guilty of conspiracy

The third claim that Petitioner has raised is that his trial counsel was ineffective because he failed to investigate the allegations against Petitioner. (*See* Doc. 3 at 7). Had his defense counsel done so, Petitioner alleges that it would have become apparent that he was at most guilty of possession of methamphetamine. (*Id.*). He argues that he could not be guilty of any conspiracy because he "was no more than a user of meth" who "rented his house in order to obtain meth for his

habit" and did not engage in sales or know "what [his co-conspirators] were going to do with meth once they left his house." (*Id.*).

Again, to establish ineffective assistance of counsel, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result of his counsel's failure. *See Strickland*, 466 U.S. at 687-92. In the context of plea bargaining, Petitioner can establish prejudice by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Petitioner has not alleged that he would not have pleaded guilty. Rather, he has alleged prejudice by stating that "he is serving a longer mandatory minimum sentence for the conspiracy that lacked the elements to convict." (Doc. 3 at 7). His Petition does not properly allege prejudice in this context, and is therefore facially deficient. *See Hill*, 474 U.S. at 59.

Even if Petitioner had properly alleged prejudice, however, any suggested failing on his attorney's part was cured during the change of plea hearing, in which Petitioner admitted to facts that gave rise to criminal liability for a conspiracy. A "[c]onspiracy is agreement to violate some other law." *United States v. Bartlett*, 567 F.3d 901, 905 (7th Cir. 2009). Proof of a drug conspiracy under 21 U.S.C. § 846 requires "substantial evidence that the defendant knew of the illegal objective of the conspiracy and agreed to participate." *United States v. Longstreet*, 567 F.3d 911, 918-19 (7th Cir. 2009). The Court explained this to Petitioner during the change of plea hearing, when it told him that the government would need to prove that he

14

"knowingly and intentionally" agreed to become part of an agreement to "manufacture and distribut[e] methamphetamine." (12-cr-10015, Doc. 134 at 7). Petitioner then acknowledged that he "provided a place for methamphetamine to be manufactured to get payment for a drug addiction," and said that he understood what the others were using his property to do. (*Id.* at 21). These admissions by Petitioner during his change of plea hearing provide the factual basis for adjudicating him guilty of conspiracy. *See Longstreet*, 567 F.3d at 918-19.

The Court concluded that Petitioner was "fully competent and capable of entering an informed plea," that he was "aware of the nature of the charge against him . . . and the consequences of his plea," and that his plea was "a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." (12-cr-10015, Doc. 134 at 26). Therefore, any deficiency on Petitioner's counsel's behalf "was cured by the Court's accurate advice and warnings." *See Henry v. United States*, No. 03 CV 4024, 2006 WL 839435, at *6 (S.D. Il. Mar. 29, 2006). For these reasons, Petitioner's third ground fails as well.

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) even though Petitioner has not requested one.

According to 28 U.S.C. § 2253, a habeas petitioner will only be allowed to appeal issues for which a certificate of appealability has been granted." *Sandoval v.*

*United States*, 574 F.3d 847, 852 (7th Cir. 2009). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* (citing 28 U.S.C. § 2253(c)). Under this standard, a petitioner must demonstrate that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For cases in which a district court denies a habeas claim on procedural grounds, the habeas court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

Consistent with the discussion above, the Court finds that no reasonable jurists would differ on the Court's treatment of Petitioner's 2255 motion. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## Conclusion

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court, the Court has reviewed Petitioner's § 2255 motion and the record of Petitioner's criminal proceedings. Based upon this review, the Court concludes that Petitioner is not entitled to relief under § 2255. The motion (Doc. 1) is dismissed. The clerk is directed to notify Petitioner Lloyl Tennison. No Certificate of Appealability shall issue from this Court. IT IS SO ORDERED.

CASE TERMINATED.

Entered this 1st day of April, 2015.

                                                s/Joe B. McDade
                                              JOE BILLY McDADE
                                United States Senior District Judge